1
2
3
4
5
6
7

```
                           FILED
                  CLERK, U.S. DISTRICT COURT

                   11/15/2023

                  CENTRAL DISTRICT OF CALIFORNIA
                  BY: ____JB____ DEPUTY
```

8                UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                  June 2023 Grand Jury

11  UNITED STATES OF AMERICA,          No.  2:23-cr-00561-MCS

12           Plaintiff,               I N D I C T M E N T

13           v.                       [18 U.S.C. § 1349: Conspiracy to
                                       Commit Wire Fraud and Bank Fraud;
14  KENNETH CARTER,                    18 U.S.C. § 1028A(a)(1):
                                       Aggravated Identity Theft; 18
15           Defendant.               U.S.C. § 2(a), (b): Aiding and
                                       Abetting; 18 U.S.C. § 981(a)(1)(C)
16                                     and 28 U.S.C. § 2461(c): Criminal
                                       Forfeiture]
17

18

19  The Grand Jury charges:

20          INTRODUCTORY ALLEGATIONS AND DEFINITIONS

21  At all times relevant to this Indictment:

22       1.   Defendant KENNETH CARTER was a resident of Oregon and an

23  employee of AT&T who worked at an AT&T retail store in Portland,

24  Oregon.

25       2.   AT&T Corporation ("AT&T") was a telecommunications company

26  headquartered in Dallas, Texas, with retail stores across the United

27  States, including in Portland, Oregon, and Lancaster, California,

28  within the Central District of California.

3.    A Subscriber Identity Module ("SIM") card was a chip located inside a cell phone that stored information identifying and authenticating a cell phone subscriber.  When a cell phone carrier reassigned a phone number from one physical phone to another -- such as when a customer purchased a new phone but wanted to retain the same number -- the carrier switched the assignment of the cell phone number from the SIM card in the old phone to the SIM card in the new phone, a process sometimes called "porting" a number.

4.    "SIM swapping" was the process of fraudulently inducing a cell phone carrier to reassign a cell phone number from the legitimate subscriber or user's SIM card to a SIM card controlled by another without the legitimate subscriber's or user's authorization.

5.    An "overlay" was an electronic template containing a victim's personal identifying information, which could be printed to create a fraudulent driver's license.

1                              COUNT ONE

2                         [18 U.S.C. § 1349]

3        The Grand Jury re-alleges and incorporates by reference

4   paragraphs 1 through 5 of the Introductory Allegations and

5   Definitions of this Indictment as though fully set forth herein.

6   A.   OBJECTS OF THE CONSPIRACY

7        Beginning on an unknown date, but no later than on or about May

8   16, 2018, and continuing through at least November 14, 2019, in Los

9   Angeles County and Orange County, within the Central District of

10  California, and elsewhere, defendant KENNETH CARTER ("CARTER"),

11  together with Coconspirator 1, Coconspirator 2, Coconspirator 3, and

12  others known and unknown to the Grand Jury, knowingly conspired and

13  agreed with each other to commit wire fraud, in violation of Title

14  18, United States Code, Section 1343, and bank fraud, in violation of

15  Title 18, United States Code, Sections 1344(1) and 1344(2).

16  B.   THE MANNER AND MEANS OF THE CONSPIRACY

17       The objects of the conspiracy were to be accomplished, in

18  substance, as follows:

19       1.   Coconspirator 1 would identify potential victims who had

20  bank accounts that could be accessed online.

21       2.   Coconspirator 1 would obtain personal identifying

22  information and cell phone numbers for potential victims.

23       3.   Coconspirator 1 would send a victim's personal identifying

24  information and cell phone number to defendant CARTER and other

25  coconspirators, including Coconspirator 2 and Coconspirator 3.

26       4.   In some instances, Coconspirator 1 would send to other

27  coconspirators a victim's personal identifying information on an

28

                                  3

overlay attached to an email, which a coconspirator would use to create a fraudulent driver's license in the victim's name.

5.    In other instances, Coconspirator 1 would send a victim's personal identifying information, including name, date of birth, and social security number, directly in the body of an email, text message, or instant message.

6.    At Coconspirator 1's instruction, defendant CARTER and other coconspirators, including Coconspirator 3, would use a victim's personal identifying information to fraudulently cause AT&T to swap the victim's SIM card from the victim's cell phone to a cell phone controlled by defendant CARTER, Coconspirator 2, Coconspirator 3, or other coconspirators.

7.    Coconspirator 1 would then cause password reset information and two-factor authentication codes for a victim's online bank account to be sent via text message to a phone controlled by defendant CARTER, Coconspirator 2, Coconspirator 3, or other coconspirators, instead of the victim's cell phone.

8.    Defendant CARTER, Coconspirator 2, Coconspirator 3, and other coconspirators would forward the password reset information or authentication codes for a victim's cell phone to Coconspirator 1.

9.    Coconspirator 1 would access a victim's online bank account and make fraudulent wire transfers from the victim's bank account.

10.  Coconspirator 1 would send payment to defendant CARTER and other coconspirators.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant CARTER, together with Coconspirator 1, Coconspirator 2, and Coconspirator 3, and

4

others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or before April 13, 2018, Coconspirator 1 obtained the cell phone number and personal identifying information, including name, date of birth, and address, of victim S.Y., a resident of Texas.

Overt Act No. 2:   On April 25, 2018, Coconspirator 1 sent victim S.Y.'s personal identifying information to Coconspirator 3.

Overt Act No. 3:   On May 16, 2018, while he was working at an AT&T retail store in Portland, Oregon, defendant CARTER swapped victim S.Y.'s SIM card from victim S.Y.'s cell phone to an Alcatel cell phone controlled by defendant CARTER.

Overt Act No. 4:   On May 16, 2018, after defendant CARTER had swapped victim S.Y.'s SIM card, he or a coconspirator instituted call forwarding on victim S.Y.'s cell phone.

Overt Act No. 5:   On May 16, 2018, Coconspirator 2 called victim S.Y.'s cell phone two times.

Overt Act No. 6:   On May 16, 2018, Coconspirator 1 gained access to victim S.Y.'s online bank account and initiated a wire transfer in the amount of $247,652.74 to a Portuguese bank account (the "Portuguese Bank Account").

Overt Act No. 7:   On or before November 6, 2018, Coconspirator 1 obtained the cell phone number and personal identifying information, including name, date of birth, and social security number, of victim S.A., a resident of the Central District of California.

Overt Act No. 8:   On or before November 6, 2018, Coconspirator 1 sent victim S.A.'s cell phone number and personal identifying information to defendant CARTER, Coconspirator 3, and other coconspirators.

Overt Act No. 9:   On November 6, 2018, after receiving victim S.A.'s information from Coconspirator 1, defendant CARTER replied, "She is on way now we only have one flip phone left."

Overt Act No. 10:   On November 6, 2018, after receiving victim S.A.'s information from Coconspirator 1, Coconspirator 3 went to an AT&T retail store in Lancaster, California, posing as victim S.A., and caused AT&T to swap victim S.A.'s SIM card from victim S.A.'s cell phone to a cell phone controlled by Coconspirator 3.

Overt Act No. 11:   On November 6, 2018, after victim S.A.'s SIM card was swapped, Coconspirator 1 changed the password, recovery email, and recovery telephone number on two of victim S.A.'s email accounts.

Overt Act No. 12:   On November 6, 2018, Coconspirator 1 gained access to victim S.A.'s online bank account and initiated a wire transfer in the amount of $246,782.70.

Overt Act No. 13:   On November 6, 2018, Coconspirator 1 paid defendant CARTER $1,150 for swapping victim S.A.'s SIM card.

Overt Act No. 14:   On or before December 6, 2018, Coconspirator 1 obtained the cell phone number and personal identifying information, including name, date of birth, and social security number, of victim S.Q.T., a resident of the Central District of California.

Overt Act No. 15:   On December 6, 2018, Coconspirator 1 sent defendant CARTER and another coconspirator victim S.Q.T.'s cell phone

number and personal identifying information.

Overt Act No. 16:    On December 6, 2018, while he was working at an AT&T retail store in Portland, Oregon, defendant CARTER swapped victim S.Q.T.'s SIM card from victim S.Q.T.'s cell phone to an Alcatel cell phone controlled by defendant CARTER.

Overt Act No. 17:    On December 6, 2018, after defendant CARTER had swapped victim S.Q.T.'s SIM card, Coconspirator 1 instructed defendant CARTER and another coconspirator to text the "message code" to a Google Voice number.

Overt Act No. 18:    On December 6, 2018, Coconspirator 1 gained access to victim S.Q.T.'s online bank account and initiated a wire in the amount of $99,528.33 to the Portuguese Bank Account.

Overt Act No. 19:    On December 6, 2018, after Coconspirator 1 initiated the wire transfer from victim S.Q.T.'s online bank account, Coconspirator 1 changed the registration email address on victim S.Q.T.'s online bank account to an email account controlled by Coconspirator 1.

Overt Act No. 20:    On December 6, 2018, Coconspirator 1 paid defendant CARTER $2,000 for swapping victim S.Q.T.'s SIM card.

Overt Act No. 21:    On November 14, 2019, at his residence in Portland, Oregon, defendant CARTER possessed personal identifying information belonging to numerous victims, including the cell phone number, name, and social security number of victims S.A. and S.Q.T.

COUNT TWO

[18 U.S.C. § 1028A(a)(1); 2(a), (b)]

Beginning on an unknown date, but no later than on or about November 6, 2018, and continuing through at least November 14, 2019, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant KENNETH CARTER ("CARTER"), and Coconspirator 1, each aiding and abetting the other, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendant CARTER and Coconspirator 1 knew belonged to other persons, during and in relation to the offense of conspiracy to commit wire fraud and bank fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

1                        FORFEITURE ALLEGATION

2              [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offenses set forth in any of Counts One through Two of this

9   Indictment.

10       2.    The defendant, if so convicted, shall forfeit to the United

11  States of America the following:

12            (a)  all right, title, and interest in any and all

13  property, real or personal, constituting, or derived from, any

14  proceeds traceable to the offenses; and

15            (b)  To the extent such property is not available for

16  forfeiture, a sum of money equal to the total value of the property

17  described in subparagraph (a).

18       3.    Pursuant to Title 21, United States Code, Section 853(p),

19  as incorporated by Title 28, United States Code, Section 2461(c), the

20  defendant, if so convicted, shall forfeit substitute property, up to

21  the value of the property described in the preceding paragraph if, as

22  the result of any act or omission of the defendant, the property

23  described in the preceding paragraph or any portion thereof (a)

24  cannot be located upon the exercise of due diligence; (b) has been

25  transferred, sold to, or deposited with a third party; (c) has been

26  placed beyond the jurisdiction of the court;

27  //

28  //

(d) has been substantially diminished in value; or (e) has been

commingled with other property that cannot be divided without

difficulty.

A TRUE BILL

/s/

_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual
  Property Crimes Section

LAUREN RESTREPO
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual
  Property Crimes Section

AARON FRUMKIN
Assistant United States Attorney
Cyber & Intellectual Property
  Crimes Section

NISHA CHANDRAN
Assistant United States Attorney
Cyber & Intellectual Property
  Crimes Section